**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**WILLIAM RICCARD,**

                 **Plaintiff,**

**-vs-**                                                        **Case No.  6:99-cv-1266-Orl-31JGG**

**PRUDENTIAL INSURANCE COMPANY**
**OF AMERICA,**

                 **Defendant.**

_____

# ORDER

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **MOTION FOR RELIEF FROM ORDERS (Doc. No. 256)**
>
> **FILED:** October 6, 2005
>
> _____
>
> **THEREON** it is **ORDERED** that the motion is **DENIED**.

## I. Background

William Riccard was demoted by his employer, Prudential Insurance Company, and later left its employ after being placed on disability.  The result of Riccard's demotion was to lessen the amount of disability payments he received.  In response, Riccard launched a bitter campaign against Prudential that has included the filing of four lawsuits; the filing of complaints alleging misconduct by Prudential with the Securities and Exchange Commission, the United States Attorney's Office, the Banking and Insurance Department of another; the filing of a motion for sanctions against Prudential and some of the attorneys representing it; and the filing of ethical complaints with the Bar Associations of two states against those attorneys.

*Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1282 (11th Cir. 2002) (affirming imposition of Rule 11 sanctions against plaintiff and his counsel for filing baseless Rule 11 motion; affirming entry of injunction against new filings against Prudential or its attorneys without permission from court due to history of filing "baseless, harassing actions"; and affirming imposition of civil contempt sanctions for violation of that injunction). In a later order in the same case, the United States Court of Appeals for the Eleventh Circuit determined that

> [m]ost of the bases for recusal Riccard set forth in [his latest motion for recusal] were related to matters he repeatedly had presented to the district court. The only new allegation concerned [Judge Presnell's] prior employment with a firm that had represented Prudential in the past. Riccard was aware of that fact at least as early as September 18, 2001, when he included it in an appellate brief that made allegations of conflicts of interest against the same judge. He did not file this recusal motion until January 31, 2003, after that judge had entered an order approving the fee award on remand.
>
> January 2003 was not a reasonable time after the grounds were known to file a motion to recuse when the grounds were known in September 2001. The district court did not abuse its discretion in denying the untimely motion to recuse.

*Riccard v. Prudential Ins. Co.*, Nos. 03-10593, 03-11664, and 03-12147, slip op. at 8 (11th Cir. Nov. 7th, 2003) (affirming amount of attorney's fees awarded as sanction; affirming denial of recusal; and affirming denial of leave to file bar complaints against Prudential's attorneys).[1]

And the bitter campaign continues. More than two and a half years after I denied his last motion for recusal (Doc. 121), the Plaintiff, William Riccard ("Riccard"), again seeks recusal

---

[1] This order is found in case number 6:97cv1390 (the "1997 case") at docket entry 230. Riccard filed essentially identical recusal motions in both this case and the 1997 case. Both motions were denied, but the Eleventh Circuit only addressed the merits of the recusal motion in the 1997 case. Riccard's interlocutory appeal of the order denying that recusal motion (Doc. 129) in this case was dismissed (Doc. 134) for lack of jurisdiction, and Riccard did not renew the appeal after that order became final.

pursuant to 28 U.S.C. § 455 and relief from "all judgments and orders entered by Judge Presnell after recusal should have been entered." (Doc. 256 at 1). Riccard contends that links he recently discovered between myself, the Prudential Insurance Company of America ("Prudential"), and some attorneys who previously represented Prudential entitle him to such a result pursuant to Rule 60 of the Federal Rules of Civil Procedure. (Doc. 244 at 3-4). Prudential's attorneys have sought (Doc. 253) and received relief (Doc. 254) from having to respond to this motion.

## II.     Legal Standards

The United States Code provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Moreover, a judge must disqualify himself if: (1) he has a personal bias or prejudice concerning a party; (2) in private practice, he served as lawyer in the matter in controversy; (3) in private practice, a lawyer with whom he previously practiced law served during the association as a lawyer concerning the matter; or (4) he has a financial interest in the subject matter in controversy or in a party to the proceeding or any other interest that could be substantially affected by the outcome of the proceeding. 28 U.S.C. § 455(b).

## III.    Legal Analysis

Riccard argues that I ought to have recused myself because I have a family member who works for a law firm that represented (and, for all I know, continues to represent) Prudential in other cases and which merged with one of the firms that represented Prudential in the instant case. Riccard also points to the fact that I did business with a Prudential affiliate at some point in the past. As was the case with his previous efforts, Riccard's latest motion for recusal is entirely baseless.

It is a well-known fact that, prior to my appointment to the bench,[2] I was a long-time member of the Akerman Senterfitt firm — a fact that Riccard has known since at least September 2001. It is also no secret that my wife, Cecelia Bonifay, has been a shareholder at that firm since before Riccard started suing Prudential. For both these reasons, I have, throughout my tenure as a District Judge, recused myself from any case in which an Akerman Senterfitt attorney entered an appearance.

To the best of my knowledge, and so far as the record discloses, Akerman Senterfitt did not represent Prudential in this case while it was being litigated, and it does not represent Prudential in this case now. Prudential was originally represented by Sonnenschein Nath & Rosenthal LLP, with Katz, Kutter, Haigler, Alderman, Bryant & Yon, P.A. ("Katz Kutter") serving as local counsel. On February 19, 2004, Akerman Senterfitt announced an impending merger with Katz Kutter. On March 2, 2004, Katz Kutter moved to withdraw from the case in lieu of the firm of King, Blackwell, Downs & Zehnder P.A. (Doc. 172).[3] On March 4, 2004, Judge Spaulding granted Katz Kutter's motion to withdraw. (Doc. 175). I do not know precisely when the Akerman-Katz Kutter merger was finalized, and Riccard does not suggest a date, but my recollection is that it happened about a month after the February 19, 2004 announcement. This

---

[2] I was appointed to the bench in August 2000, at which time the 1997 case was randomly reassigned to me along with a pro rata share of all the civil cases then pending in this division. (Doc. 87 in the 1997 case). In the interest of judicial economy, I accepted reassignment of the instant case as well in that same month. (Doc. 66-68).

[3] Riccard argues that the motion to substitute counsel applied only to attorney Ralph C. Losey of Katz Kutter and that attorney Alan Brents of the Katz Kutter firm never sought to withdraw, meaning that Brents (and therefore Akerman Senterfitt) remains counsel of record in the case. This argument is clearly frivolous. Though Losey signed the motion, it was filed on behalf of the entire Katz Kutter firm. (Doc. 172).

would place it after the date when Katz Kutter withdrew.  Between the announcement of the impending merger and the granting of Katz Kutter's motion to withdraw, I did not enter any orders in this case.  Indeed, aside from a standard *Milburn* order entered February 18, 2004 (Doc. 167), I did not enter any orders in this case between August 2003 and April 2004.[4]  Thus, my relationship and my wife's relationship with Akerman are not and were not germane to these proceedings.

     As indicated in a previous order (Doc. 129 at 10 n.7), I have no recollection of ever having represented Prudential as a lawyer.  Since leaving Akerman Senterfitt, I have not been privy to the firm's clientele.  Thus, I have no knowledge whether Akerman represents (or has represented) Prudential in other matters.  Nor would that even be pertinent to the issue of recusal in this case.  I suspect that Akerman has thousands of clients, many of whom have cases pending before this Court.  Even if I were aware of the fact, I would not be required to recuse myself if an Akerman Senterfitt client were to appear before me with other counsel.  In such a situation, I would not have a financial interest in a party or any other interest that might be substantially affected by the proceedings.  Moreover, the appellate court has already rejected Riccard's argument that my prior employment with Akerman required recusal because Akerman had represented Prudential in other matters.  (Doc. 230 in the 1997 case at 9).

---

[4] I did, however, request that the Chief Judge refer Riccard's April 7, 2004 motion for reconsideration (Doc. 191) of an order entered by the Honorable James G. Glazebrook to another district judge for disposition. (Doc. 193).  Riccard's motion made passing references to the Akerman-Katz Kutter merger (Doc. 193 at 2, 10) but did not cite the merger as a basis for the relief sought.

Riccard also seeks recusal on the basis that I once had a home mortgage with Prudential Home Mortgage Company, Inc. ("PHMC"), an affiliate of the Defendant.[5] However, this sort of ordinary business relationship would not require recusal even if it involved a party to the litigation, much less an affiliate, as here. It is not a financial interest in PHMC or an interest that might be substantially affected by the outcome of Riccard's employment suit against Prudential. Nor does it even suggest the appearance of partiality. *See Delta Air Lines, Inc. v. Sasser*, 127 F.3d 1296 (11th Cir. 1997) (concluding that judges who had Frequent Flyer Program accounts with plaintiff airline were not required to recuse themselves in suit alleging improper resale of Frequent Flyer Program awards; such accounts were not "financial interests" as specified in 28 U.S.C. § 455 as they resulted from consumer transactions in the ordinary course of doing business and could not be substantially affected by the outcome of the case, and no reasonable person could question the impartiality of judges who had such accounts).

---

[5]Riccard does not specify the period during which I had the PHMC mortgage. My recollection is that I obtained a mortgage via an independent broker, and the mortgage was transferred to PHMC before the institution of these proceedings. Subsequently, the mortgage was transferred to another entity, one not related to Prudential. Though I cannot recall the precise dates, PHMC may have held the mortgage during the course of these proceedings. PHMC did not sign a release of the mortgage until April 2003, but I believe that the transfer from PHMC occurred some time prior to that date.

Riccard's other arguments – that my wife's name and the word "Prudential" appeared near each other in search engine results (Doc. 259 at 5), and that a random attorney with the last name of "Akerman" has represented Prudential (Doc. 259 at 6) – are entirely meritless and likely sanctionable. But this Court has already spent more time on this motion than it merited.

**IV.     Conclusion**

In consideration of the foregoing, the Plaintiff's Motion for Relief from Orders (Doc. 256) is **DENIED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 12, 2005.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party